FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------X

In Re:                                                                                    Chapter 11

Nassau Tower Realty, LLC,                                                Case No. 13-24984

                                  Debtor.
-----------------------------------------------------------X
APPEARANCES:

Paul J. Maselli, Esq.
Maselli Warren, P.C.
600 Alexander Road
Suite 3-4A
Princeton, NJ 08540
*Attorney for the Debtor*

Mitchell Hausman, Esq.
Jeffrey M. Sponder, Esq.
One Newark Center, Suite 2100
Newark, NJ 07102
*Attorneys for the U.S. Trustee, Roberta A. DeAngelis*

**MICHAEL B. KAPLAN, U.S.B.J.**

## MEMORANDUM OF LAW

### I.    Introduction

This matter comes before the Court upon the United States Trustee's ("U.S. Trustee") motion ("Motion") for an order compelling the payment of U.S. Trustee fees pursuant to 28 U.S.C. § 1930(a)(6). The Court has received and reviewed the parties' submissions and entertained oral argument on September 11, 2014. The Court has also received and reviewed the

supplemental submission filed by the U.S. Trustee on September 26, 2014. For the reasons that follow, the U.S. Trustee's Motion is granted.

## II. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## III. General Background

Nassau Tower Realty, LLC ("Debtor") is a New Jersey limited liability company that, as of the Petition Date (defined below), owned nineteen parcels of real property located in New Jersey, Pennsylvania, and Maine. Most of the properties generated income in the form of rents paid by tenants. Although most of the properties are commercial properties, a few are residential.

On July 9, 2013 ("Petition Date"), Debtor filed a voluntary Chapter 11 bankruptcy petition. On September 18, 2014, the Court entered an Order confirming the Debtor's second modified Chapter 11 plan ("Plan"). Prior to confirmation of the Plan, on June 2, 2014, the U.S. Trustee filed the within Motion, seeking to assess the Debtor quarterly fees for the third quarter of 2013, the fourth quarter of 2013, and the first quarter of 2014, for a total of $21,506.26. The Debtor objected to the requested fees, and the parties entered into a briefing schedule. So that the Debtor could proceed to confirmation, the Debtor agreed to escrow the requested fees, which are currently being held by Debtor's counsel.

**IV.     Relevant Background**

It is undisputed that TD Bank and Santander Bank are creditors of the Debtor whose claims are secured by an absolute assignment of rents with respect to certain of the Debtor's real property. In its monthly operating reports ("MORs"), the Debtor discloses reductions in its loan balances as a result of the rents collected directly by TD Bank and Santander Bank; however, the Debtor does not include the rents as disbursements in its MORs.  Rather, the Debtor takes the position that the rents are not property of the Debtor's bankruptcy estate, and thus cannot be deemed disbursements made from property of the estate subject to quarterly fees.  To the contrary, the U.S. Trustee argues that the rental payments collected by TD Bank and Santander Bank should be reported by the Debtor as "receipts," as the payments were applied to reduce the Debtor's obligations to its secured creditors.  As such, the U.S. Trustee asserts that the reduction in the Debtor's loan balances is sufficient, in and of itself, to be considered a "disbursement" subject to quarterly fees under 28 U.S. Code § 1930(a)(6).

Employing the same rationale regarding the assignment of rents, the U.S. Trustee also argues that certain insurance proceeds paid to Santander Bank, stemming from damage to the Debtor's property as a result of Superstorm Sandy, are disbursements for purposes of calculating quarterly fees. The insurance proceeds at issue were not used to repair the property because Santander Bank determined that the property could not be restored; instead, the proceeds were applied to the mortgage debt owing to Santander Bank by the Debtor.  Inasmuch as the insurance proceeds received by Santander Bank effectively reduced the Debtor's loan balance, the U.S. Trustee contends that such payments constitute "disbursements" by the Debtor.

V.  **Discussion**

A.  **"Disbursements" under 28 U.S. Code § 1930**

The crux of the dispute stems from the U.S. Trustee's and the Debtor's divergent interpretation of the term "disbursement," as that term is used in 28 U.S. Code § 1930(a)(6). That section, which addresses bankruptcy fees, states, in relevant part, as follows:

> 28 U.S. Code § 1930 - Bankruptcy fees
>
> (a) The parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court, if one has been certified pursuant to section 156 (b) of this title, the following filing fees:
>
>> (6) In addition to the filing fee paid to the clerk, **a quarterly fee shall be paid to the United States trustee**, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be…$4,875 for each quarter in which **disbursements** total $300,000 or more but less than $1,000,000; $6,500 for each quarter in which **disbursements** total $1,000,000 or more but less than $2,000,000;…$10,400 for each quarter in which **disbursements** total $3,000,000 or more but less than $5,000,000… The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

28 U.S. Code § 1930(a)(6) (emphasis added).

Although not defined in 28 U.S. Code § 1930, "[d]isbursements, for purposes of calculating the quarterly fee under § 1930(a)(6), has been interpreted broadly to include all payments, whether made directly by the debtor or by a third party on the debtor's behalf." In re WM Six Forks, LLC, 502 B.R. 88, 92 (Bankr. E.D.N.C. 2013). In this Court's view, however, including all payments made by a third party on a debtor's behalf would serve to muddy the

waters on what should be considered a "disbursement." For example, such an expansive definition would conceivably include payments made by a corporate debtor's principal based on the triggering of a separate loan guarantee of the debtor's debt obligation. This Court ***does*** ***not*** believe that requiring the bankruptcy estate to pay quarterly fees based on the principal's payments in that instance would be an equitable result.

Likewise, the approach espoused by the U.S. Trustee would call for the inclusion in the fee calculation of payments made from the liquidation of collateral owned by third parties. For instance, where a guarantor of a corporate debtor has pledged his home as additional collateral, a foreclosure by the secured party, which reduces the debtor's obligation, would give rise to a higher quarterly fee payment. This is simply nonsensical. As such, the Court believes that there is no basis to equate the term "disbursement" with every form of third-party payment that simply benefits a debtor, and holds that the above definition of "disbursements" is overly broad. The issue is not ***"who"*** is paying the disbursement, but rather from ***"where"*** did the funds originate.

The Court submits that a more appropriate starting point in defining the term "disbursement" under 28 U.S. Code § 1930 is to include all payments *from the bankruptcy estate*. However, instead of narrowly limiting disbursements to payments made directly from the bankruptcy estate, the Court suggests that a sensible interpretation is to include as disbursements not only direct payments from a debtor, but also payments that are ***derived*** or traceable from estate property. Maintaining this approach will allow the U.S. Trustee to consider as disbursements all payments made that originate from estate property, resulting in a more balanced application of 28 U.S. Code § 1930 when assessing quarterly fees.

Moreover, the Court notes that its holding is not inconsistent with the approach taken by the Third Circuit Court of Appeals in <u>Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Healthcare Ventures, Inc.)</u>, 402 F.3d 416 (3d Cir. 2005).  In <u>Genesis Healthcare</u>, the Third Circuit defined "disbursement" as follows:

> "Disbursement" is not defined in the statute. Thus we interpret the word in accordance with its "ordinary, contemporary, common meaning." <u>Perrin v. United States</u>, 444 U.S. 37, 42, 62 L. Ed. 2d 199, 100 S. Ct. 311 (1979) (citation omitted). "Disburse" is defined as "to expend" or "to pay out." Websters' Third New International Dictionary 644 (1976). Based on this ordinary meaning, the Ninth Circuit Court of Appeals held that indirect payment of a debtor's expenses--i.e., payments made by an unrelated third party to secured creditors of the debtor--are disbursements of the owing debtor and should be included in calculating its quarterly fees under § 1930(a)(6). <u>St. Angelo v. Victoria Farms, Inc.</u>, 38 F.3d 1525, 1533-34 (9th Cir. 1994).
>
> Other courts concur. See <u>In re Central Copters, Inc.</u>, 226 B.R. 447, 449-50 (Bankr. D. Mont. 1998) (holding that the sale proceeds of the secured property, which were paid directly from the purchaser to a secured creditor, should be included in the debtor's disbursements for the purpose of the fee calculation under § 1930(a)(6)); <u>In re Flatbush Assocs.</u>, 198 B.R. 75, 78 (Bankr. S.D.N.Y. 1996) (concluding that the rents paid directly by a debtor's subtenants to an apartment cooperative, which satisfied the cooperative fees the debtor owed to the apartment cooperative, are the debtor's disbursements); <u>In re Meyer</u>, 187 B.R. 650, 653 (Bankr. W.D. Mo. 1995) ("Disbursements subject to quarterly fees pursuant to 28 U.S.C. § 1930 (a)(6) are unrelated to who makes the disbursement or to whom the disbursement is made.") (citations omitted); <u>In re Hays Builders, Inc.</u>, 144 B.R. 778, 780 (Bankr. W.D. Tenn. 1992) ("The ordinary, plain meaning of the statutory language requires that all disbursements, whether direct or through a third party, be included in the calculation of fees due the trustee under § 1930(a)(6).").

<u>Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Healthcare Ventures, Inc.)</u>, 402 F.3d 416, 421-22 (3d Cir. 2005).  In light of the above, it is clear that the focal point of the Third

Circuit was on constructive disbursements made by a non-debtor payor, and whether or not those payments constituted disbursements for purposes of 28 U.S. Code § 1930.

In Genesis Healthcare and the cases cited therein, however, it is evident that the funds being disbursed by third parties originated from property of the bankruptcy estate. For instance, in Genesis Healthcare, the funds belonging to 350 separate debtors were commingled into a single debtor's cash management account. All of the funds were thus property of a bankruptcy estate. Likewise, in several of the other cited cases, lawyers, escrow agents or third parties made disbursements from the proceeds of previously sold bankruptcy estate property. Although the courts in Genesis Healthcare and the cases cited therein were not asked to determine the origin of the property paid by third parties, the Court is confident that the Third Circuit would agree that disbursements subject to quarterly U.S. Trustee fees under 28 U.S. Code § 1930 must be derived from property of the bankruptcy estate.

### B.    Assignment of Rents

Turning to the purported "disbursements" at issue, the Court will first address the assignment of rents by the Debtor to TD Bank and Santander Bank. As indicated above, it is undisputed that the Debtor had given TD Bank and Santander Bank an absolute assignment of rents prior to the Petition Date. Moreover, it is undisputed that TD Bank and Santander Bank have elected to exercise their rights with respect to such rents. Thus, the only remaining question in light of this Court's definition of "disbursements" is whether the rents collected by TD Bank and Santander Bank, which were used to pay down the respective loan balances, are derived from the Debtor's bankruptcy estate. For the reasons that follow, the Court answers this question in the affirmative.

7

Neither party disputes that the Third Circuit's holding in <u>First Fidelity Bank v. Jason Realty, L.P. (In re Jason Realty, L.P.)</u>, 59 F.3d 423 (3d Cir. 1993) is binding on this Court with respect to assignment of rents and estate property. There, the Third Circuit, applying state law, clearly held that rents subject to assignment are not property of the bankruptcy estate. <u>Id.</u> Thus, the rents at issue in this case are without question outside of the scope of the bankruptcy estate. Despite falling outside the parameters of the bankruptcy estate, however, it is axiomatic that the rents are derived and/or traceable from estate property, *i.e.*, the Debtor's ownership interest in property that generates rental income. Without the Debtor's ownership interest in the subject properties, and without utilizing said properties to create rental income, there would be no rents to assign. Rather, the rents began as a property interest of the Debtor and were effectively transferred out of the estate to TD Bank and Santander Bank through an assignment. In accordance with <u>Jason Realty</u>, therefore, the rents are not property of the estate but clearly originate with what was once estate property. Accordingly, the Court holds that the rents collected by TD Bank and Santander Bank and applied to the Debtor's loan balances are disbursements for purposes of 28 U.S. Code § 1930, subject to quarterly U.S. Trustee fees.

    **C.**    **Insurance Proceeds**

The Court reaches a similar conclusion with respect to the insurance proceeds paid to Santander Bank. With regard to insurance policies, bankruptcy courts distinguish between ownership of an insurance policy and ownership of the proceeds which it generates. <u>First Fidelity Bank v. McAteer</u>, 985 F.2d 114, 117 (3d Cir. 1993) ("[o]wnership of a life insurance policy such as involved here, does not necessarily entail ownership of the proceeds of that policy. Several different parties may have a property interest in such a policy or its proceeds,

8

including the owner, the insured, and the beneficiary, all of whom may be different persons"); In re Edgeworth, 993 F.2d 51, 55 (5th Cir. 1993) ("courts are generally in agreement that an insurance policy will be considered property of the estate . . . because, regardless of who the insured is, the debtor retains certain contract rights under the policy itself. . . . Acknowledging that the debtor owns the policy, however, does not end the inquiry. 'The question is not who owns the policies, but who owns the liability proceeds'") (quoting In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1399, 1401 (5th Cir. 1987)) (finding that a directors' and officers' liability policy belonged to the bankruptcy estate but that the liability proceeds belonged to the directors and officers and were not estate property).  A primer on insurance in the landlord tenant context defines the parties in interest as follows:

> There are three key parties affected by an insurance policy:
>
> ● **Named insured.** The named insured is the party that pays the premium for the property or liability policy. The insurance company underwrites the policy and the premium based on the claims history and risk posed by the named insured. . . . It is not appropriate for a lease to require the landlord or the tenant to be a named insured or additional named insured on the other's policy.
>
> ● **Additional insured.** An insurer can add either a landlord or tenant to the other's property or liability policy as an additional insured. The added party can recover only if it has an insurable interest in the insured's property. . . . [I]f a tenant in a turnkey space carries property insurance on its movable trade fixtures, the landlord will have very little, if any, insurance interest under the tenant's property insurance covering the trade fixtures. When a party is added as an additional insured, the negligent actions of the insured party will not defeat coverage of the additional insured under the policy. The additional insured has the independent right regardless of the actions of the primary insured to a defense under the insured's policy, which can supplement the indirect indemnification provisions under the lease. . . .

9

> ● **Loss payee.** An insurer can add either a landlord or tenant to the other's property or liability policy as a loss payee instead of as an additional insured. This gives the loss payee a mutual claim to the insurance proceeds. Just as an additional insured must have an insurable interest, so much as loss payee. Being a loss payee is not as desirable as being an additional insured, because the loss payee is subject to all defenses that the insurer may have against the primary insured. Further, a loss payee is entitled to the insurance proceeds only if the primary insured decides to pursue a claim.[1]

Ann Peldo Cargile, The Basics of Insurance in Leases, 14 A.B.A. Sec. Probate & Property 19 (Nov./Dec. 2000).

In this case, it is clear from the record that Santander Bank was paid the insurance proceeds at issue as a loss payee on the Debtor's insurance policy.  It follows, then, that Santander Bank was entitled to the insurance proceeds only as a result of the Debtor's election to pursue its claim, and subject to all defenses that the insurance carrier may have presented against the Debtor in connection with the Debtor's claim.  In this regard, any payments to Santander Bank from insurance proceeds are derived from the Debtor's rights as the primary insured.

The distinction between an "additional insured" and a "loss payee" is an important one when considering disbursements under 28 U.S. Code § 1930.  As an additional insured, such party would have the independent right, regardless of the actions of the primary insured, to a defense under the insured's policy.  Whereas an additional insured possesses individual contract rights to proceeds under an insurance policy, a loss payee's recovery is wholly contingent on the

---

[1] Accord Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 448, *cert. den.* 385 U.S. 834 (1966) ("ordinarily the rights of a loss payee are derivative and cannot exceed those of the insured. . . . But it is also true that a loss payee acquires independent 'equitable rights, which the insurer is bound to regard'") (internal citations omitted); Rena, Inc. v. TW. Brien, 310 N.J. Super. 304, 317 (App. Div. 1998) ("[a] loss payee is not an insured but only 'a mere appointee [of the insured] who may not recover if the insured has breached any provision of the policy which would prevent recovery by him.' . . . If the loss is not payable to the insured, it is not payable to the loss payee") (internal citations omitted).

primary insured's decision to prosecute its claim. Accordingly, the Court holds that the insurance proceeds recovered by the Debtor, as the primary insured, which were paid directly to Santander Bank, as loss payee, are derived from property interests held by the bankruptcy estate and, thus, constitute disbursements pursuant to 28 U.S. Code § 1930(a)(6), subject to the appropriate quarterly U.S. Trustee fees.

### VI.     Conclusion

For the reasons expressed above, the U.S. Trustee's Motion is granted. Counsel for the U.S. Trustee is directed to submit an Order consistent with the Court's ruling.

Dated: October 27, 2014

/s/ Michael B. Kaplan
Honorable Michael B. Kaplan
United States Bankruptcy Judge